UNITED STATES DISTRICT COURT
NORTHERN DISRICT OF INDIANA - HAMMOND DIVISION

| | |
|---|---|
| DANIEL PATTON and CATHRYN PATTON <br> as Trustees of PALM TREE 401K, PSP, <br>     Plaintiffs <br>         vs. <br> CHAD DEUCHER, RICK CLATFELTER, and <br> MARQUIS PROPERTIES, LLC <br>     Defendants | ) <br> ) <br> ) <br> ) CASE NO: <br> ) _____ <br> ) <br> ) |

## COMPLAINT

Plaintiffs DANIEL PATTON and CATHRYN PATTON as Trustees of PALM TREE 401K, PSP (collectively, "PLAINTIFFS"), by counsel, Nancy J. Townsend of Burke Costanza & Carberry LLP, for their Complaint against Defendants CHAD DEUCHER, RICK CLATFELTER, and MARQUIS PROPERTIES, LLC (collectively, "DEFENDANTS"), state:

### Jurisdiction

1. The matters complained of herein arise from the use of interstate commerce for mail and wire fraud in violation of federal law. This Court therefore has original jurisdiction over this action pursuant to 28 U.S.C. §1331, in that the Complaint states a claim for civil RICO liability under 18 U.S.C. §§1962 and 1964.

2. This Court has also has diversity jurisdiction over this matter by virtue of 28 U.S.C. §1332.

3. The jurisdictional minimum is met, as this action involves a claim for fraud in amounts in excess of $165,000.00.

### Parties

4. Plaintiffs DANIEL PATTON and CATHRYN PATTON are Trustees of the PALM TREE 401K, PSP, a one-participant 401(k) plan with its principal place of business in Valparaiso, Porter County, Indiana.

5. Defendant CHAD DEUCHER is a citizen of the State of Utah.

6. Defendant RICK CLATFELTER is a citizen of the State of Arizona.

7. Defendant MARQUIS PROPERTIES, LLC, is a limited liability company organized under the laws of the State of Utah, with its principal place of business in Utah.

8. MARQUIS PROPERTIES, LLC is registered to do business and is doing business in the State of Indiana.

{File: 01370301.DOC}

## Venue

9.  Venue is proper in the United States District Court for the Northern District of Indiana because a substantial part of the events or omissions giving rise to the claim occurred in this district and because all DEFENDANTS are subject to the Court's personal jurisdiction under Indiana law for their acts committed by them while doing business within this district. 28 U.S.C. §1391 (b)(2) & (3).

## Facts Common to All Counts

10. In August and September of 2013, DEFENDANTS used the United States mail and wire to solicit PLAINTIFFS' investment in real estate ventures, promising DANIEL PATTON that PLAINTIFFS would have valuable mortgage interests in real estate in exchange for transfers of funds to DEFENDANTS.

11. True and accurate copies of electronic email transmissions between DANIEL PATTON, RICK CLATFELTER, and CHAD DEUCHER are attached hereto as *Exhibit 1*.

12. The following electronic communications occurred between DANIEL PATTON and RICK CLATFELTER:

   a. On 8/9/2013, RICK CLATFELTER contacted DANIEL PATTON by email, identifying himself as an "Investment Strategist," offering investments in "Real Estate, Agriculture, Development and Secured Promissory Notes. All very solid assets and low risk investments;"

   b. DANIEL PATTON responded by email on 8/10/2013, agreeing to speak by telephone and asking for written information;

   c. On 8/13/2013, RICK CLATFELTER responded by recommending "the Evergreen Project" and assuring that "everything [he does] is secured by assets and or collateral so it is a safe position to be in" and that he did "not have the pdf version of the marketing materials for the notes but we can discuss the terms when we speak;"

   d. On 8/16/2013, RICK CLATFELTER spoke with DANIEL PATTON by telephone to recommend "investments;"

   e. On 8/20/2013, RICK CLATFELTER contacted DANIEL PATTON by email, representing that the investments are all "secured" and offering several investment options, including "Investment 4:"

      i. a $100,000 Very Short Term collateralized promissory note in Marquis Properties;

      ii. with full principal and an additional $10,000 to be repaid after 90 days; and

      iii. representing that he would have a "First Deed of Trust" which is "always over collateralize[d] so you are in super strong and safe position as an investor."

   f. On 8/30/2013, RICK CLATFELTER forwarded a copy of an executed Promissory Note signed by RICK CLATFELTER as Executive Vice President of MARQUIS

{File: 01370301.DOC}2

      PROPERTIES, LLC, in the amount of $100,000 to DANIEL PATTON by email and directed him to wire $100,000 in funds to U.S. Bank, N.A., in Orem, Utah, Routing #124302150, Account #153152219561, an account that was purportedly owned by MARQUIS PROPERTIES, LLC;

  g. The documents forwarded by RICK CLATFELTER included a "Secured Promissory Note" in favor of Palm Tree 401k PSP dated 8/30/2013 in the amount of $100,000, a true and correct copy of which is attached hereto as *Exhibit 2* (the "9/5/2013 Park Hills Note");

  h. Contrary to the representation that the 9/5/2013 Park Hills Note would be secured by a mortgage in real estate, no mortgage was prepared by DEFENDANTS or provided to PLAINTIFFS to secure the 9/5/2013 Park Hills Note;

  i. On 9/1/2013, RICK CLATFELTER sent another email to DANIEL PATTON offering to "go over the paperwork on Wednesday morning [9/4/2013] and get that all wrapped up so [RICK CLATFELTER] can submit and then [DANIEL PATTON] can wire [the funds] afterwards;"

13. By these false promises, DEFENDANTS induced DANIEL PATTON to transfer the sum of $100,000 to them on or about 9/5/2013 by wire transfer from his Wells Fargo account to an account owned and controlled by DEFENDANTS at U.S. Bank, N.A. in Orem, Utah. A true and correct copy of the Wire Transfer Request by which $100,000 in funds were transferred is attached hereto as *Exhibit 3*.

14. Through the 9/5/2013 Park Hills Note, DEFENDANTS promised DANIEL PATTON that he would receive a Ten Percent (10%) return on his investment after three (3) months and, if not paid, would receive interest at an annual rate of Thirty Percent (30%).

15. Thereafter, in October 2013, DEFENDANTS again used the United States mail and wire to solicit DANIEL PATTON's additional investment in real estate ventures, promising that he would have valuable mortgage interests in real estate in exchange for transfers of funds to DEFENDANTS. Specifically:

  a. On 10/2/2013, RICK CLATFELTER sent an email to DANIEL PATTON offering two additional "investment opportunities" in the amount of $375,000 and $250,000, respectively, which RICK CLATFELTER described as "special," "time sensitive" deals being offered on a "first come first serve basis" and asking for another transfer of funds by mid-October, 2013;

  b. When DANIEL PATTON indicated by email on 10/4/2013 that he did not have the funds in the requested amount, RICK CLATFELTER offered by return email on 10/4/2013 to "break up that $250,000 into two parts" allowing DANIEL PATTON to invest $125,000 rather than the $250,000 initially requested and representing that the investment would provide full return of principal, plus $18,750 after 180 days;

  c. DANIEL PATTON declined this "investment opportunity."

16. On 11/18/2013, approximately two weeks prior to the original maturity date of the 9/5/2013 Park Hills Note, RICK CLATFELTER emailed DANIEL PATTON, stating that RICK CLATFELTER had "left [DANIEL PATTON] a couple messages and sent some texts…[and] was just trying to touch base…about a couple investment options and update you on [the 9/5/2013 Park Hills Note]…Let you know what the reinvestment opportunities might be if you are interested."

17. Between 11/18/2013 and 11/22/2013, RICK CLATFELTER and DANIEL PATTON spoke by telephone regarding "reinvestment" of the 9/5/2013 Park Hills Note.

18. On 11/22/2013, RICK CLATFELTER explained the "renewal" options for the 9/5/2013 Park Hills Note to DANIEL PATTON through an email, which

   a. Stated "Bet you are glad you met Dave [Cole] and Me;" and
   b. Recommended an option whereby DANIEL PATTON would "Let the principle [sic] and the interest due [on the 9/5/2013 Park Hills Note] roll to new note thereby getting a compound rate on [his] original interest."

19. On 12/3/2013, RICK CLATFELTER forwarded to DANIEL PATTON by email:

   a. "Renewal docs" for the 9/5/2013 Park Hills Note, which were signed by RICK CLATFELTER as Executive Vice President of MARQUIS PROPERTIES, LLC, which were actually sham documents and included:

      i. a "Secured Promissory Note" in favor of Palm Tree 401k PSP dated 12/3/2013 in the amount of $110,000 ("Park Hills Renewal Note"), a true and correct copy of which is attached hereto as *Exhibit 4*; and

      ii. a "Mortgage Deed" on property commonly known as 13251 Park Hills, Kansas City, Missouri (the "Park Hills Mortgage Deed") a true and correct copy of which is attached hereto as *Exhibit 5*;

   b. A representation that RICK CLATFELTER had "prepared…a new deed…dated for [12/3/2013];"
   c. Assurances that the deed "will be recorded at Jackson county as soon as we get back the signatory page of the note agreement;" and
   d. Representations that RICK CLATFELTER had walked through the property securing the Park Hills Renewal Note, that the property is "very nice," and that it had a value between $115,000 and $125,000.

20. In or around February 2014, RICK CLATFELTER again contacted DANIEL PATTON with another "investment opportunity," initially seeking an investment of $100,000 but agreeing to the lesser sum of $65,000. In that regard,

   a. RICK CLATFELTER forwarded loan documents to DANIEL PATTON by email on 2/21/2014, including

{File: 01370301.DOC}4

  i. a "Secured Promissory Note" in favor of Palm Tree 401k PSP, dated 2/21/2014 in the amount of $65,000 (the "Oakland Note"), which was signed by RICK CLATFELTER as Executive Vice President of MARQUIS PROPERTIES, LLC and included a personal guarantee of both CHAD DEUCHER and RICK CLATFELTER as "co-owners of collateral," a true and correct copy of which is attached hereto as *Exhibit 6*; and

  ii. a Mortgage Deed on property commonly known as 13403 Oakland, Kansas City, Missouri (the "Oakland Mortgage Deed"), which was signed by RICK CLATFELTER as Executive Vice President of MARQUIS PROPERTIES, LLC and notarized by Melissa L. Clatfelter, a true and correct copy of which is attached hereto as *Exhibit 7*.

 b. RICK CLATFELTER's email of 2/21/2014 to DANIEL PATTON stated that the "note agreement" had already been signed by RICK CLATFELTER and CHAD DEUCHER for the personal guarantee; it requested that DANIEL PATTON wire the funds before 2pm that day.

21. Induced by the misrepresentations and fraud of RICK CLATFELTER and CHAD DEUCHER, DANIEL PATTON wired funds in the amount of $65,000 from his Wells Fargo Account to an account owned or controlled by DEFENDANTS at U.S. Bank, N.A.

22. A true and correct copy of the Wire Transfer Request by which $65,000 in funds were transferred is attached hereto as *Exhibit 8*.

23. Through the Oakland Note, DEFENDANTS promised DANIEL PATTON that he would receive a Ten Percent (10%) return on his investment after three (3) months and, if not paid, would receive interest at an annual rate of Thirty Percent (30%).

24. DEFENDANTS did not provide PLAINTIFFS with the original of the 9/5/2013 Park Hills Note, the Park Hills Renewal Note, or the Oakland Note and have refused to respond to PLAINTIFFS' written request for the originals, which was made through his attorney on 9/2/2014.

25. A true and correct copy of the 9/2/2014 demand for the original 9/5/2013 Park Hills Note, the Park Hills Renewal Note, and the Oakland Note is attached hereto as *Exhibit 9*.

26. DEFENDANTS did not record the Park Hills Mortgage Deed or the Oakland Mortgage Deed.

27. Because DEFENDANTS failed to record the Park Hills Mortgage Deed and the Oakland Mortgage Deed, PLAINTIFFS had no mortgage interest in the real estate described in those deeds.

**Subsequent Encumbrances and Transfers of the Oakland Property**

28. When DEFENDANTS solicited funds from DANIEL PATTON for the Oakland Note, they failed to disclose that the property described in the Oakland Mortgage (the "Oakland Property") was subject to a prior mortgage in favor of VMJ, LLC (the "VMJ Mortgage"), which was recorded on 7/3/2013.

29. DEFENDANTS used the funds from the Oakland Note to obtain a release of the VMJ Mortgage, which was recorded on 2/24/2014.

30. Rather than recording the Oakland Mortgage in favor of PLAINTIFFS, DEFENDANTS thereafter received $65,000 in additional funds from Watson Ventures, LLC and caused the Oakland Property to be mortgaged to Watson Ventures, LLC, by a Deed of Trust recorded on 3/4/2014, (the "Watson Ventures Mortgage").

31. A true and correct copy of the Watson Ventures Mortgage is attached as *Exhibit 10*.

32. Watson Ventures, LLC is a Utah limited liability company, has its principal office at 3306 North Canyon Road, Provo, Utah 84604.

33. Lee McCullough of 5314 N. River Run Drive, Suite 350, Provo, Utah 84604 is the registered agent of Watson Ventures, LLC.

34. A. Cook of 3306 North Canyon Road, Provo, Utah 84604 is a registered member of Watson Ventures, LLC.

35. Because DEFENDANTS had not recorded the Oakland Mortgage, the Watson Ventures Mortgage created a lien on the Oakland Property that is ostensibly superior to PLAINTIFFS' putative mortgage interest in the Oakland Property.

36. DEFENDANTS thereafter transferred the Oakland Property by Warranty Deed to Darcell White and Darrell White, causing the recording of a Warranty Deed with the Jackson County, Missouri Recorder of Deeds on 6/25/2014 as Instrument No. 2014E0051084.

37. Because DEFENDANTS had not recorded the Oakland Mortgage, the Oakland Property was ostensibly transferred free and clear of PLAINTIFFS' putative mortgage interest in the Oakland Property.

**Subsequent Encumbrances and Transfers of the Park Hills Property**

38. On or about 2/1/2013, CHAD DEUCHER received a loan of $42,250.37 from Alpine Motor Sports and executed a mortgage on behalf of MARQUIS PROPERTIES, LLC in favor of Alpine Motor Sports (the "Alpine Motor Sports Mortgage").

39. CHAD DEUCHER caused the Alpine Motor Sports Mortgage to be recorded against the property described in the Park Hills Mortgage Deed (the "Park Hills Property") on 2/8/2013.

40. A true and correct copy of the Alpine Motor Sports Mortgage is attached hereto as *Exhibit 11*.

41. Because DEFENDANTS had not recorded the Park Hills Mortgage, the Alpine Motor Sports Mortgage was ostensibly superior to PLAINTIFFS' putative mortgage interest in the Park Hills Property.

42. On 4/25/2014, DEFENDANTS sold the Park Hills Property, transferring it to third parties, Jermaine J. Levingston and Lakeisha M. Johnson by Warranty Deed, which was recorded on 5/1/2014 (the "Levingston Warranty Deed").

43. A true and correct copy of the Levingston Warranty Deed is attached hereto as *Exhibit 12*.

44. Because DEFENDANTS had not recorded the Park Hills Mortgage, the Park Hills Property was ostensibly transferred free and clear of PLAINTIFFS' putative mortgage interest in the Park Hills Property.

**Plaintiffs' Efforts to Collect on Promissory Notes**

45. When DANIEL PATTON requested repayment of the Park Hills Renewal Note and the Oakland Note, RICK CLATFELTER solicited his "reinvestment" of the funds in a joint venture, by emails dated 6/4/2014 and 6/9/2014.

46. When DANIEL PATTON insisted on repayment, RICK CLATFELTER promised to provide a deed release form and, by emails on 6/10/2014, 6/17/2014, 6/19/2014 and 6/20/2014, RICK CLATFELTER insisted that DANIEL PATTON sign the deed release prior to repayment of the Park Hills Renewal Note.

47. By email dated 6/24/2014, RICK CLATFELTER again insisted that DANIEL PATTON sign the deed release prior to repayment and offered to schedule a conference call with DANIEL PATTON and "CEO of Marquis Properties CHAD DEUCHER" the following day, 6/25/2014.

48. Thereafter, during the week of 6/25/2014, CHAD DEUCHER spoke with DANIEL PATTON by telephone and promised repayment of the Park Hills Renewal Note through an "escrow arrangement" with a third-party escrow agent chosen by CHAD DEUCHER.

49. When the escrow contract was not provided as promised, DANIEL PATTON again requested an escrow contract and repayment of the funds, by email dated 7/8/2014.

50. By email dated 7/10/2014, CHAD DEUCHER provided DANIEL PATTON with the name of the "escrow agent," GREG RINGER, who was to facilitate the loan repayment and related deed release.

51. By email dated 7/18/2014, CHAD DEUCHER provided DANIEL PATTON with a sham "escrow agreement," which did not specify the amount of repayment or any other essential terms and did not include any space for signature by the escrow agent.

52. By email dated 7/22/2014 in response to DANIEL PATTON's repeated demands for return of his funds, RICK CLATFELTER offered a conference call among DANIEL PATTON, RICK CLATFELTER, and CHAD DEUCHER, to occur on 7/25/2014.

53. On 7/24/2014, DANIEL PATTON provided a valid form of escrow agreement, to facilitate the loan repayment and related deed release, which CHAD DEUCHER approved and falsely promised to return with the signature of the escrow agent; the escrow agreement was not returned.

**Plaintiffs' Damages**

54. PLAINTIFFS' funds have not been repaid, causing them pecuniary losses of at least $165,000.

**Other Wrongdoers**

55. Non-defendant wrongdoers, whose degree of knowledge and involvement in DEFENDANTS' misconduct is presently unknown, include:
   a. MELISSA L. CLATFELTER, who is believed to be related to RICK CLATFELTER and participated in the preparation of sham documents by notarizing signatures thereof;
   b. JESSICA FITTS, who participated in the preparation of sham documents by notarizing signatures thereof;
   c. DAVID COLE, who referred DANIEL PATTON to DEFENDANTS and may have profited from DEFENDANTS' violations of law.

## COUNT I
## RELIEF UNDER CIVIL RICO UNDER FEDERAL LAW

56. PLAINTIFFS reallege paragraphs 1 through 54.

57. DEFENDANTS are "persons" under 18 U.S.C. §1961(3) because they are individuals or entities "capable of holding a legal or beneficial interest in property."

58. MARQUIS PROPERTIES, LLC is an "enterprise" under 18 U.S.C. §1961(4) because it is a legal entity created under the laws of the State of Utah.

59. MARQUIS PROPERTIES, LLC engaged in or its activities affected interstate commerce.

60. RICK CLATFELTER and CHAD DEUCHER devised a scheme to defraud PLAINTIFFS and used the United States mail for the purpose of executing, or attempting to execute, the scheme, as described herein, and thereby committed mail fraud indictable under 18 U.S.C. §1341.

61. RICK CLATFELTER and CHAD DEUCHER devised a scheme to defraud PLAINTIFFS and used interstate telephone calls and electronic communications in furtherance of the scheme and thereby committed wire fraud indictable under 18 U.S.C. §1343.

62. The conduct of RICK CLATFELTER and CHAD DEUCHER is indictable under 18 U.S.C. §§1941 and 1943 constitutes "racketeering activity" under 18 U.S.C. §1961(1)(B).

63. RICK CLATFELTER and CHAD DEUCHER, in conducting the affairs of MARQUIS PROPERTIES, LLC, engaged in a pattern of racketeering activity by committing at least two related acts of racketeering activity between August 2013 and October 2014 that involve a distinct threat of continuing long-term racketeering activity.

64. RICK CLATFELTER and CHAD DEUCHER were employed by or associated with MARQUIS PROPERTIES, LLC and conducted its affairs in interstate commerce through a pattern of racketeering activity, which violated 18 U.S.C. §1962 and was the proximate cause of injury to PLAINTIFFS's property in the sum of at least $165,000.

65. Pursuant to 18 U.S.C. §1964(c), RICK CLATFELTER and CHAD DEUCHER are liable to PLAINTIFFS for a compulsory award of treble damages, costs, and attorney fees for their violation of 18 U.S.C. §1962.

WHEREFORE, PLAINTIFFS respectfully request that the Court find that RICK CLATFELTER and CHAD DEUCHER have committed RICO violations and are liable to PLAINTIFFS, jointly and severally, for a compulsory award of treble damages in the amount of $495,000, plus costs, and attorney fees pursuant to 18 U.S.C. §1964(c) and grant PLAINTIFFS all other just and proper relief.

## COUNT II
### RELIEF UNDER INDIANA CRIME VICTIMS COMPENSATION ACT FOR PROPERTY CRIMES IN VIOLATION OF INDIANA LAW

66. PLAINTIFFS reallege Paragraphs 1 through 54.

67. PLAINTIFFS transferred funds to RICK CLATFELTER, CHAD DEUCHER, and MARQUIS PROPERTIES, LLC for the limited and express purpose of acquiring secured promissory notes and mortgage interests in the Park Hills Property and the Oakland Property and did not authorize any other use of those funds.

68. By using PLAINTIFFS' funds for purposes other than that authorized by PLAINTIFFS, RICK CLATFELTER, CHAD DEUCHER, and MARQUIS PROPERTIES, LLC knowingly and intentionally exerted unauthorized control over PLAINTIFFS'S property with intent to deprive PLAINTIFFS of its value or use and thereby committed theft in violation of Indiana law, IC §35-43-4-2.

69. By using PLAINTIFFS' funds for purposes other than that authorized by PLAINTIFFS, RICK CLATFELTER, CHAD DEUCHER, and MARQUIS PROPERTIES, LLC knowingly and intentionally exerted unauthorized control over PLAINTIFFS'S property and thereby committed criminal conversion in violation of Indiana law, IC §35-43-4-3.

70. By knowingly and intentionally making a false or misleading written statements to PLAINTIFFS with intent to obtain property from them, RICK CLATFELTER, CHAD DEUCHER, and MARQUIS PROPERTIES, LLC committed deception in violation of Indiana law, IC §35-43-5-3.

71. By misrepresenting the identity and quality of the security instruments securing PLAINTIFFS' loans with intent to defraud them, RICK CLATFELTER, CHAD DEUCHER, and MARQUIS PROPERTIES, LLC, committed deception in violation of Indiana law, IC §35-43-5-3.

72. RICK CLATFELTER, CHAD DEUCHER, and MARQUIS PROPERTIES, LLC encumbered and transferred property with intent to defraud PLAINTIFFS, who were their creditors, and thereby committed fraud in violation of Indiana law, IC §35-43-5-4(8).

73. PLAINTIFFS have suffered pecuniary losses of at least $165,000 as a result of DEFENDANTS' violations of IC 35-43 and are therefore entitled to relief under Indiana's Crime Victims Compensation Act ("CVCA"), including actual damages and up to three times the actual damages and a reasonable attorney's fee, along with other expenses, IC 34-24-3-1. *See Klinker v. First Merchants Bank, N.A.*, 964 N.E.2d 190, 193 (Ind. 2012).

WHEREFORE, PLAINTIFFS respectfully request that the Court find that RICK CLATFELTER, CHAD DEUCHER, and MARQUIS PROPERTIES, LLC have committed theft,

criminal conversion, deception, and fraud in violation of Indiana law, IC §35-43 and have thereby caused pecuniary losses to PLAINTIFFS, and enter an award of actual damages against them jointly and severally in the amount of at least $165,000, treble damages of $495,000, a reasonable attorney's fee, and other expenses pursuant to the CVCA, IC 34-24-3-1, and grant PLAINTIFFS all other just and proper relief.

## COUNT III
## SUIT ON PROMISSORY NOTES

74. PLAINTIFFS reallege Paragraphs 1 through 54.

75. As of 10/1/2014, the following amounts are due on the Park Hills Renewal Note, with interest accruing at the rate of $103.97 per day thereafter:

| PARK HILLS NOTE - DUE AS OF | 10/1/2014 | |
| --- | --- | --- |
| Principal and interest due on | 6/1/2014 | $126,500.00 |
| Default Interest Rate | 30% | |
| Per Diem | $103.97 | |
| Interest Accrued as of | 10/1/2014 | $12,684.66 |
| Late Fee | | $100.00 |
| TOTAL DUE | | $139,284.66 |

76. As of 10/1/2014, the following amounts are due on the Oakland Note, with interest accruing at the rate of $58.77 per day thereafter:

| OAKLAND NOTE - DUE AS OF | 10/1/2014 | |
| --- | --- | --- |
| Principal and interest due on | 6/21/2014 | $71,500.00 |
| Default Interest Rate | 30% | |
| Per Diem | $58.77 | |
| Interest Accrued as of | 10/1/2014 | $5,994.25 |
| Late Fee | | $100.00 |
| TOTAL DUE | | $77,594.25 |

77. MARQUIS PROPERTIES, LLC is liable to PLAINTIFFS on the Park Hills Renewal Note and the Oakland Note in the sum of at least $216,878.90, plus interest, costs and attorney fees pursuant to the terms of the Park Hills Renewal Note and the Oakland Note.

78. RICK CLATFELTER and CHAD DEUCHER guaranteed the the Park Hills Renewal Note and the Oakland Note and are likewise liable to PLAINTIFFS in the sum of at least $216,878.90, plus interest, costs and attorney fees pursuant to their guarantees of the Park Hills Renewal Note and the Oakland Note.

WHEREFORE, PLAINTIFFS respectfully request that the Court find that MARQUIS PROPERTIES, LLC, RICK CLATFELTER, and CHAD DEUCHER, are jointly and severally

liable to them for breach of the Park Hills Renewal Note and the Oakland Note and related guaranties in the sum of at least $216,878.90 as of 10/1/2014, plus interest, costs and attorney fees and grant PLAINTIFFS all other just and proper relief.

                Respectfully submitted,

                BURKE COSTANZA & CARBERRY LLP
                Attorneys for Plaintiffs, PALM TREE 401K, PSP

        By:    /s/ Nancy J. Townsend
                Nancy J. Townsend, #17178-45
                9191 Broadway
                Merrillville, IN 46410
                PH: (219) 769-1313

**EXHIBITS**
1. Email communications with Rick Clatfelter and Chad Deucher
2. 9/5/2013 Park Hills Note
3. 9/5/2013 $100,000 Wire Transfer Request for the 9/5/2013 Park Hills Note
4. 12/3/2013 Park Hills Renewal Note
5. Park Hills Mortgage Deed
6. 2/21/2014 Oakland Note
7. Oakland Mortgage Deed
8. 2/21/2014 $65,000 Wire Transfer Request for the Oakland Note
9. 9/2/2014 Correspondence from Attorney Nancy J. Townsend to Defendants
10. Watson Ventures Mortgage
11. Alpine Motor Sports Mortgage
12. Levingston Warranty Deed